UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BRIAN KEITH FOSTER,

        Petitioner,                             Hon. Wendell A. Miles

v.                                         Case No. 1:04-CV-91

TERRY SHERMAN,

        Respondent.
_____/


**REPORT AND RECOMMENDATION**

        This matter is before the Court on Foster's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Foster's petition be **dismissed**.


**BACKGROUND**

        On the evening of March 18, 2000, Petitioner (a.k.a. Freaky B) attended a party at Melanie Herrmann's residence. (Trial Transcript, Oct. 24, 2000, 42-45, 81-82; Trial Transcript, Oct. 25, 2000, 56-57, 66-67). Several other people attended this party, including Reynaldo Lopez (a.k.a. Loco) and his younger brother Benjamin Lopez (a.k.a. Little Loco). (Trial Transcript, Oct. 24, 2000, 43-47, 81-84; Trial Transcript, Oct. 25, 2000, 21-25, 57-58, 67-68).

        While at the party, Petitioner purchased crack cocaine from Little Loco, who immediately thereafter left the party. (Trial Transcript, Oct. 24, 2000, 48-49; Trial Transcript, Oct. 25, 2000, 27-28).

Petitioner later complained to Loco about the poor quality of the cocaine he purchased from Little Loco. (Trial Transcript, Oct. 25, 2000, 28-29). Petitioner also participated in a crap game with Loco and several other people. (Trial Transcript, Oct. 24, 2000, 47-51, 84-85; Trial Transcript, Oct. 25, 2000, 26-27, 58-59, 68-69). Loco won money from Petitioner and several other individuals. (Trial Transcript, Oct. 24, 2000, 51, 85; Trial Transcript, Oct. 25, 2000, 26-27, 68-69). Petitioner was upset about losing his money to Loco. (Trial Transcript, Oct. 24, 2000, 51-52, 85). Petitioner and Loco then began arguing about Petitioner's gambling losses, as well as the poor quality of the cocaine which Petitioner had purchased from Little Loco. (Trial Transcript, Oct. 24, 2000, 51-53).

Petitioner eventually retreated to a bathroom. (Trial Transcript, Oct. 24, 2000, 54, 86; Trial Transcript, Oct. 25, 2000, 29-30, 60). He exited the bathroom a few minutes later and immediately began firing a pistol at Loco, demanding that Loco give his money to Petitioner. (Trial Transcript, Oct. 24, 2000, 54-57, 86-90; Trial Transcript, Oct. 25, 2000, 30-32, 60-62). Loco refused, at which point Petitioner began striking Loco in the head with his pistol. (Trial Transcript, Oct. 24, 2000, 58-62, 90-91; Trial Transcript, Oct. 25, 2000, 31-32, 61-62). After absorbing several blows, Loco placed all of his money on the floor. (Trial Transcript, Oct. 24, 2000, 91; Trial Transcript, Oct. 25, 2000, 32-33, 62-63). Petitioner took Loco's money. (Trial Transcript, Oct. 24, 2000, 92; Trial Transcript, Oct. 25, 2000, 33, 63). Petitioner then pointed his pistol directly at Loco and pulled the trigger - twice. (Trial Transcript, Oct. 25, 2000, 33). Because Petitioner was apparently out of ammunition, his gun merely clicked in response. *Id.* Petitioner then departed the residence with Loco's money. (Trial Transcript, Oct. 24, 2000, 92; Trial Transcript, Oct. 25, 2000, 33, 63).

Petitioner was subsequently charged with (1) armed robbery, (2) felonious assault, (3) intentionally discharging a firearm in an occupied dwelling, and (4) possessing a firearm at the time he

committed or attempted to commit a felony. (Trial Transcript, Oct. 25, 2000, 54-60). Following a jury trial, Petitioner was convicted of all four offenses. *Id.* at 68-71. Petitioner was also found guilty (in a bifurcated proceeding) of being a felon in possession of a firearm. *Id.* at 72-74.

Petitioner was sentenced to 15-60 years in prison on the armed robbery conviction; 15-72 months on the felonious assault conviction; 2-6 years on the conviction for intentionally discharging a weapon in an occupied dwelling; and 30-90 months on the felon in possession of a firearm conviction. (Sentencing Transcript, Dec. 19, 2000, 7-8). These four sentences were to be served concurrently. Petitioner was also sentenced to two years in prison (to be served consecutively to the aforementioned sentences) for committing a felony while possessing a firearm. *Id.* Petitioner appealed his convictions to the Michigan Court of Appeals asserting the following claims:

> I. Mr. Foster was denied the effective assistance of counsel by the failure to argue the full scope of claim of right defense supported by the evidence.

> II. Mr. Foster's convictions for both armed robbery and felonious assault constitute a violation of the protection against double jeopardy.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Foster*, No. 232038, Opinion (Mich. Ct. App., Sep. 13, 2002). Asserting the same claims, Petitioner later submitted in the Michigan Supreme Court a delayed application for leave to appeal. The court denied Petitioner leave to appeal. *People v. Foster*, No. 122518, Order (Mich., May 30, 2003). On February 9, 2004, Petitioner submitted the present petition, asserting the following claims:

> I. Petitioner was denied the effective assistance of counsel by the failure to argue the full scope of claim of right defense supported by the evidence.

II.     Petitioner's convictions for both armed robbery and felonious assault constitute a violation of the protection against double jeopardy.

## STANDARD OF REVIEW

Foster's petition, filed February 9, 2004, is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.  The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant

state court decision was contrary to, or involved an unreasonable application of, clearly established

Federal law.  *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state

court was based on an unreasonable determination of the facts in light of the evidence presented, the

factual findings of the state court are presumed to be correct.  *See Warren v. Smith*, 161 F.3d 358, 360

(6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)).  Petitioner can rebut this presumption only by clear and

convincing evidence.  *Id.*

The deferential standard articulated by the AEDPA, however, does not apply if the state

has failed altogether to review a particular claim.  As the Sixth Circuit has indicated, where the state

court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to

which [the] court can defer."  In such circumstances, the court conducts a *de novo* review.  *See McKenzie*

*v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 123 S. Ct. 2527, 2542 (2003)

(reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340

F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any

claim that was not addressed by the state courts).

**ANALYSIS**

**I.          Ineffective Assistance of Counsel Claim**

To defend against the charge of armed robbery (which contains a specific intent

requirement), Petitioner requested that the jury be instructed on the claim of right defense.  The trial

court agreed with Petitioner and gave the requested instruction.  Petitioner now claims that his trial

counsel rendered ineffective assistance by failing to adequately present a claim of right defense.

To establish that counsel's performance was constitutionally deficient, Petitioner must first establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, it must be demonstrated that counsel's actions were unreasonable under prevailing professional norms. *Id.* at 688. In making this determination, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Second, Petitioner must further establish that counsel's performance was prejudicial in that it denied him a fair trial. *See Id.* at 687; *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so <u>manifestly</u> ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 113 S. Ct. 2969 (1993) (emphasis in original); *see also, West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

With respect to Petitioner's claim of right defense, the trial judge provided the following instruction:

> Now the crime of armed robbery requires proof of a specific intent. This means the prosecution must prove not only that the defendant did certain acts but that he did those acts with the intent to bring about a particular result. For the crime of armed robbery this means the prosecution must prove that the defendant intended by force or placing in fear to steal money from the person of Reynoldo Lopez and permanently deprive him of it. The defendant's intent may be proved by what he said, by what he did, by how he did it or by any other facts and circumstances that are in evidence.
>
> I instruct you that the crap game which took place at 244 Matilda, Northeast, on March 18th of 2000 was illegal. The winner of this game,

apparently Reynoldo Lopez, did not obtain legal title to his winnings and the losers had a right to recover their loosing [sic] through legal proceedings in court.

Now to be guilty of the larceny element of robbery and therefore in order to be guilty of armed robbery, a person must as previously instruct[ed] intend to steal. In this case there has been some evidence that the defendant took the property because he claimed the right to do so. If so, the defendant did not intend to steal.

Now when does such a claimed right exist? It exists if the defendant took the property honestly believing that it was legally his or that he had a legal right to have it. Two things are important. The defendant's belief must be honest and he must claim a legal right to the property. You should notice that the test is whether the defendant honestly believed he had such a right. It does not matter if the defendant was mistaken or should have known otherwise. It also does not matter if the defendant used force to get the property if he knew that someone else claimed the property. The defendant does not have to prove that he claimed the right to take the property. Instead, the prosecutor must prove beyond a reasonable doubt that the defendant took the property without a good faith claimed right to do so.

(Trial Transcript, Oct. 25, 2000, 56-57).

As Petitioner recognizes, his claim of right defense suffered from two glaring shortcomings. First, the evidence presented at trial indicated that Loco won money playing craps from several people - not just Petitioner. However, Petitioner took all of Loco's money, not simply the amount which Loco obtained from Petitioner. The evidence also indicated that Petitioner's attack on Loco was at least partially motivated by Petitioner's belief that Little Loco had sold him inferior crack cocaine. This evidence tends to refute the claim that Petitioner's claim of right defense.

Petitioner asserts that while his attorney appropriately pursued the claim of right defense with respect to his alleged attempt to recover his gambling losses, his attorney was ineffective for failing to also assert this defense with respect to his alleged attempt to recover the money he spent purchasing

crack cocaine.  According to Petitioner, such a strategy would have explained why he took from Loco more than the amount he lost playing craps, thereby refuting the weaknesses identified above.

As previously noted, Petitioner purchased the crack cocaine from Little Loco.  There is no evidence that Loco had any involvement in the drug transaction or that he possessed the money that Petitioner paid to Little Loco to purchase the crack cocaine.  Thus, as the Michigan Court of Appeals correctly observed "there was no evidence to connect the drug money to the money that was taken from [Loco] during the armed robbery or to connect the drug transaction to [Loco]." *People v. Foster*, No. 232038, Opinion at 4 (Mich. Ct. App., Sep. 13, 2002).

As the court of appeals further observed, "there was no evidence regarding the amounts of money involved in the robbery, drug, and gambling transactions making it impossible to determine whether the drug money, had it been held or owed by [Loco], accounted for the remainder of the money taken during the robbery."  Furthermore, Petitioner "took all of [Loco's] money without distinction based on its source, some of which was gambling winnings from other individuals."  Thus, as the court of appeals correctly concluded, "it cannot be said that [Petitioner] acted in a good faith belief that the money taken in the robbery from [Loco] was owed to [Petitioner]." *Id.*

The Michigan Court of Appeals determined that this particular claim was without merit. In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

**II.**          **Double Jeopardy Claim**

The Fifth Amendment to the United States Constitution states that no person "shall. . .be subject for the same offense to be twice put in jeopardy of life or limb. . ."  The double jeopardy clause affords every criminal defendant three basic protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *See Banner v. Davis*, 886 F.2d 777, 779 (6th Cir. 1989) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)).  Petitioner asserts that his convictions for both armed robbery and felonious assault violate his rights under the double jeopardy clause of the United States Constitution.  Specifically, Petitioner asserts that he has been subjected to multiple punishments for a single criminal offense.

Pursuant to Michigan law, in effect as of the date Petitioner committed the offenses at issue, the elements of the crime of armed robbery were: (1) an assault; (2) a felonious taking of property from the victim's person or presence; and (3) while the defendant is armed with a dangerous weapon, the definition of which included a weapon designed to be dangerous and capable of causing death or serious injury. *People v. Norris*, 600 N.W.2d 658, 660-61 (Mich. Ct. App. 1999).  On the other hand, the elements of the offense of felonious assault were: (1) an assault; (2) with a dangerous weapon; and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *People v. Avant*, 597 N.W.2d 864, 869 (Mich. Ct. App. 1999).

With respect to Petitioner's double jeopardy claim, the Michigan Court of Appeals held as follows:

> there were two legally distinct and separate assaults that occurred at different times. Regarding the armed robbery charge, defendant assaulted Lopez by pointing and firing a gun in his direction, followed by the pistol whipping, which forced Lopez to turn over the money.  The armed

> robbery, and the necessarily included assault, were then completed and constituted a crime under Michigan law.  However, the defendant then proceeded to point the gun at Lopez and pull the trigger twice as he was leaving the residence.  This act constituted a separate offense of felonious assault that was distinct from the assault that was committed in accomplishing the armed robbery; therefore, defendant's double jeopardy rights were not violated.

*People v. Foster*, No. 232038, Opinion at 6 (Mich. Ct. App., Sep. 13, 2002).

The determination by the court of appeals is supported by the evidence and legal authority discussed above.  Thus, Petitioner was not subjected to multiple punishments for a single criminal act, but was instead subjected to multiple punishments for *multiple* criminal acts.  Such does not offend the double jeopardy clause.  *See, e.g., United States v. Redditt*, 87 Fed. Appx. 440, 447 (6th Cir., May 21, 2003) (where a defendant receives multiple punishments for having committed *separate* criminal acts, the double jeopardy clause is not violated because the defendant has not been subjected to multiple sentences for the *same* offense); *Williams v. Bournay*, 1999 WL 196532 at *2 (6th Cir., Mar. 22, 1999) (same).  Accordingly, this claim raises no issue on which relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly, the undersigned recommends that Foster's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: October 6, 2006                         /s/ Ellen S. Carmody
                                              ELLEN S. CARMODY
                                              United States Magistrate Judge